## MURRELL ALSUP v. STATE.

No. 2061. Decided December 18, 1912.

Rehearing Denied February 19, 1913.

**1.—Burglary—Charge of Court—Requested Charges.**

Where, upon trial of burglary, the refused requested charges were covered by the main charge of the court, there was no error.

**2.—Same—Want of Consent.**

In a prosecution for burglary, the indictment need not allege that entry was without the consent of the owner, and the State is not required to prove the want of consent of persons not named in the indictment.

**3.—Same—Evidence—Res Gestae.**

Upon trial of burglary, there was no error in permitting the State to show what the defendant did when the witnesses came to the alleged house to arrest him. This was res gestae.

**4.—Same—Evidence—Declarations of Third Parties.**

Upon trial of burglary, there was no error in admitting the statements of the State's witness as to what he did in trying to shield the prosecutrix shortly before the burglary from the defendant because defendant was drunk, etc., there being other testimony to the same effect which led up to what defendant said he was going to do.

**5.—Same—Evidence—Res Gestae.**

Upon trial of burglary, there was no error in admitting testimony as to the remarks of the officer with reference to the defendant resisting arrest just before he arrested him, it being part of the res gestae.

**6.—Same—Evidence—Declarations of Third Party.**

Upon trial of burglary, there was no error in admitting testimony showing the condition of the room alleged to have been burglarized immediately after defendant was arrested.

**7.—Same—Evidence—Private Residence.**

Upon trial of burglary, there was no error in permitting the owner of the house to testify that the same was a private residence and who constituted his family.

**8.—Same—Verdict—Words and Phrases.**

Where, upon trial of burglary, the verdict of the jury misspelled the words "guilty and assess," but there could be no misunderstanding as to the meaning of the verdict, there was no reversible error.

**9.—Same—Verdict by Lot.**

Where the trial court heard testimony on defendant's motion for new trial on the ground that the verdict was arrived at by lot and found against the defendant, there was no error.

Appeal from the District Court of Comanche. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of burglary; penalty, three years and three months imprisonment in the penitentiary.

The opinion states the case.

*Smith & Palmer* and *Eidson & Eidson*, for appellant.—On question of admitting res gestae statements: Dowell v. State, 58 Tex. Crim. Rep., 482; 126 S. W. Rep., 871; Richmond v. State, 58 Tex. Crim. Rep., 435; 126 S. W. Rep., 596; Rowan v. State, 57 Tex. Crim. Rep., 625; 124 S. W. Rep., 68.

On the question of the insufficiency of the verdict: Brookman v. State, 906 S. W. Rep., 928; Sanders v. State, 78 S. W. Rep., 518; White v. State, 40 S. W. Rep., 789.

*C. E. Lane*, Assistant Attorney-General, for the State.

HARPER, JUDGE.—The Assistant Attorney-General has briefed this case so thoroughly, and presented the questions so correctly, we adopt his brief as the opinion of the court:

"Appellant was convicted in the District Court of Comanche County, Texas, under an indictment charging him with burglary with intent to rape, and his punishment was assessed at confinement in the penitentiary for the term of three years and three months.

The facts in this case are substantially as follows: Miss Hettie Roberson, who was a second cousin to Mrs. Hunter Watson, was visiting at the home of Hunter Watson in the town of Gustine, Comanche County, Texas, on the 23rd of March, 1912. On that day Hunter Watson was out of the city. The Gustine Mercantile Co. held a millinery opening on that day and there was an unusually large crowd in attendance, listening to the music, etc. Miss Hettie Roberson, who had worked for the store the year before, was at the opening, as was also Murrell Alsup, the defendant. The defendant asked one J. W. Peeples if he had seen anything of the 'ex-clerk,' whom Peeples understood to mean Miss Roberson, and he replied that he had seen her in there, but told the defendant that he thought she had gone to

Watson's store. The defendant then told Peeples that he was going 'to have a piece of it,' and left the store, going in the general direction of Watson's store, and was not seen by Peeples any more that day. Peeples testified that Miss Roberson had not left the store when he told defendant that she had gone to Watson's, but that he saw defendant was drunk, or rather drinking, and was afraid he would do or say something to Miss Roberson in there that he ought not to. Defendant was married at that time, but the year before he kept company with Miss Roberson. About 5:00 that evening Miss Roberson left the store in company with one Graham Tullos, going to the home of Hunter Watson. They had gone about 100 yards and were passing the lumber yard, when the defendant who was following them, called to Tullos 'Graham,' but Tullos paid no attention to him, and he called again, 'Oh, Graham,'' and still Tullos paid no attention to him, and then he called again, 'Graham, by G—d, stop.' Tullos then stopped and waited for defendant, but told Miss Roberson to go on home (about 300 yards further). When the defendant caught up with Tullos he said, 'Graham, by G—d, you are having a time with that girl and I am going to have some of it too,' and he says, 'My life is a misery to me, and I had just as soon be in the penitentiary as not,' and then said, 'By G—d, I am going to fuck her or kill her.' Tullos then tried to get defendant to go on back, which he refused to do, and he (Tullos) then stopped in at the lumber yard and spoke to one K. Roberts, and then went home and came back by the Gustine Mercantile Co. and saw Sam Hancock, a deputy sheriff, and the two got in a buggy and went at a rapid gait to Watson's house, where Miss Roberson was boarding. They first saw defendant next in Watson's yard, and then saw him climb in a window. Mrs. Watson testified that when Miss Roberson came in she looked flushed and called her attention to some one coming and told her (Mrs. Watson) that she did not want to see him, and she (Mrs. Watson) told her, 'Certainly you will not have to see him.' They locked all the doors to the house, and got in a room with two doors between them and the room defendant entered. K. Roberts phoned over and asked them if there was not a drunken man at their house and if they did not want him to come over and help, and Mrs. Watson told him to come. Deputy Sheriff Hancock and Graham Tullos came in about this time and ran in the house and heard defendant say, 'By G—d, where is she,' and Hancock then opened the door to the room where defendant was and said, 'Come on and go with me, Murrell,' and he says, 'No, by G—d, I am not going.' Hancock and Tullos then grabbed defendant and threw him down, and Hancock got on top of him and held him while Tullos went to the buggy and got a rope to tie him with, and about that time K. Roberts came in, which was about three or four minutes after Hancock and Tullos first got there. Defendant was cursing and fighting all this time, but Hancock, Tullos and Roberts got him tied and took him out to the buggy and left. Mrs. Watson

testifies that when she went in the room after these men had left, one of the windows was up; that it had been down all winter; was hard to raise, etc. She further testified that there was mud all over the floor where they had been scuffling; that there was mud on the window sill of the window that was half open and mud on the lace curtains of the window, showing where defendant entered the room. Mr. Watson testified that he did not give his consent to defendant to enter his house. This is substantially all the testimony. The defendant introduced no testimony. It was shown by practically all the witnesses that the defendant was drinking on the day this offense is alleged to have been committed.

Appellant has filed ten bills of exceptions and also numerous assignments in his motion for new trial. Bills of exceptions Nos. 1, 3, and 4 insist that the court erred in refusing each of the following special charges: "Gentlemen of the Jury: You are instructed as a part of the law of this case that before you would be warranted in finding a verdict of guilty, it is imperative on the State to show by legal and competent evidence, in addition of other matters and things hereinbefore charged, beyond a reasonable doubt, that the defendant did break and enter the house in question and that at the very time of breaking and entering, if he did so, that he then and there had the specific intent to commit an assault and battery in and upon the person of Hettie Roberson, and that he had the specific intent then and there to use force on the said Hettie Roberson, and had the specific intent to use all force that might become necessary to overpower and overcome all resistance that the said Hettie Roberson might make, and that he had the intent then and there to ravish and carnally know the said Hettie Roberson, and unless you believe from the evidence in this case that the defendant at the time he entered said building, if he did so, had the specific intent to do all the matters and things hereinbefore stated at the very time of breaking and entering said building, if he did so, you will find the defendant not guilty."

"Gentlemen of the Jury: You are further instructed that if you should believe that the defendant intended to have sexual intercourse with Hettie Robertson, but have a reasonable doubt as to whether he intended to rape her by force, while in said house, you will acquit the defendant."

"Gentlemen of the Jury: If you should believe that the defendant by force did break and enter the house in question, and if you should further believe that the defendant intended to have sexual intercourse with Hettie Roberson, but should have a reasonable doubt as to whether he intended to have such intercourse by force, as force has been defined to you, you will acquit the defendant."

The court qualified each of these bills, stating that he refused these various special charges because the matter covered in said charges was sufficiently covered in the court's main charge, and in defendant's

special requested charge No. 2, which was given to the jury. The court in his main charge instructed the jury as follows:

"Now if you believe from the evidence beyond a reasonable doubt that the defendant  *  *  *  did then and there break and enter the house  *  *  *  with the specific intent on his part then and there to commit the crime of rape by force upon the person of Miss Hettie Roberson, as rape by force has been defined to you in this charge, then in that event you will find the defendant guilty," etc.

In defining rape by force the court instructed the jury that it was essential to constitute rape by force, among other things, "that the prosecutrix at the time and place thereof used all the strength in resistance she could employ and at no time consented or yielded to the defendant, but that the defendant used such degree of force as was sufficient to overcome and which does overcome all of the resistance with which the prosecutrix opposes the act."

Defendant's requested charge given by the court reads as follows: "In order for the defendant to be convicted in this case it must be shown by the evidence beyond a reasonable doubt that defendant when he entered the house had the specific intent to commit rape by force, that is, that he intended to have carnal knowledge of Hettie Roberson without her consent, using sufficient force to overcome all the resistance that the said Hettie Roberson was capable of putting forth, and unless you do so find you will acquit the defendant and say by your verdict not guilty."

The main charge of the court and this special requested charge of defendant which was given sufficiently covered the matter, and the court's action in refusing each of the special requested charges in question was not erroneous.

Bill of exceptions No. 2 insists that the court erred in refusing defendant's special requested charge, which was as follows: 'The evidence showing that Hunter Watson was away from home at the time of the alleged burglarious entry into his house, and that his wife, Mrs. Watson, was at home and in charge of and in possession of said house, it is necessary that the want of consent be shown on the part of the said Mrs. Watson, and unless the evidence shows beyond a reasonable doubt that defendant entered without the consent of Mrs. Watson you will find the defendant not guilty.'

Indictment need not allege that 'entry' was without the consent of the owner. Sullivan v. State, 13 Texas Crim. App., 462; Smith v. State, 22 Texas Crim. App., 350; Williams v. State, 41 Texas, 98; Reed v. State, 14 Texas Crim. App., 662; Buntain v. State, 15 Texas Crim. App., 485; Langford v. State, 17 Texas Crim. App., 445; Black v. State, 18 Texas Crim. App., 124; Sampson v. State, 20 S. W. Rep., 708. And the State is not required to prove the want of consent of persons not named in the indictment. Skaggs v. State, 56 Texas Crim. Rep., 79; Willis v. State, 33 Texas Crim. Rep., 168; Holmes v. State,

42 S. W. Rep., 979; Hurley v. State, 35 Texas Crim. Rep., 382; Coates v. State, 31 Texas Crim. Rep., 257.

Bills of exception Nos. 5 and 10 complain of the action of the court in permitting witnesses Sam Hancock and Graham Tullos to testify to what the defendant did when they came to the house to get him. i. e., that he was swearing, bucking and rearing; that he called them sons-of-bitches, etc. The action of the court in permitting these witnesses to testify to these matters was not error, as shown by his qualification to these bills, in that it was res gestae of the offense.

Bill of exceptions No. 6 complains of the action of the court in permitting the witness, J. W. Peeples, after testifying that defendant asked him where the 'ex-clerk' was, and that he told defendant she had gone to Watson's store, while in truth and infact she had not gone but was in the store at that very time and that he was standing between her and the defendant to keep the defendant from seeing her, etc.; and that the defendant was drunk, and to testify that the reason he did this was defendant was drunk and he was afraid he might say or do something to Miss Roberson there in the store that he ought not to. The objection is that it was improper for the witness to give his inference, opinion and conclusions as to what the defendant intended to do or probably would do when he found Miss Roberson, etc. In view of all the facts and circumstances of the case, this testimony could not have been prejudicial to the defendant, if inadmissible. The record otherwise clearly shows that he was drunk on this occasion, and this testimony merely led up to what defendant said he was going to do.

Bill of exceptions No. 7 complains that the court erred in permitting the witness, Sam Hancock (deputy sheriff), to testify that when he got to the house of Hunter Watson, he knew the defendant was in there somewhere, and he told the women folks to step out that he might have to shoot, and they stepped back into another room. The court qualified this bill as follows: 'What the witness was permitted to testify transpired while the defendant was in another room of the same house where witness was, and the defendant then actually, according to the State's contention, engaged in the commission of the crime charged against him. The remark of Hancock was made only an instant before he opened the door of the room in which the defendant was at said time and where, when the door was opened by Hancock, he was confronted by the defendant. I admitted the evidence as a part of the res gestae.' The court did not err in this respect, because the defendant's conduct at the time was the cause of the remark.

Bill of exceptions No. 8 complains that the court erred in permitting Mrs. Watson to testify as to the condition of the room immediately after the officer left with the defendant, as to mud being on the floor, etc. There is no merit presented by this bill, as it is but shown that the window was raised, the window sill muddy, and the

circumstances were admitted to show the place of entry of defendant.

Bill of exceptions No. 9 insists that the court erred in permitting Hunter Watson to testify that the house alleged to have been burglarized was his private residence and to state what his family consisted of. There is no merit presented by this bill, as it was admissible to show that appellant had no right to enter the house in the manner he did.

The only matters of any importance presented in the motion for new trial are as follows: 1. That the verdict of the jury is unintelligible, uncertain and without meaning on its face. The verdict reads as follows: 'We the jury find the defendant *guidy* and *asscss* his punishment at three years and three months in the penitentiary.' These misspelled words in the verdict would not be ground for new trial. In the case of Harris v. State, 34 S. W. Rep., 922, a verdict which read, 'We the jury find the defendant guitty and assess his punishmz at 90 days imp. county jale,' was held good. In Attaway v. State, 31 Texas Crim. Rep., 475, the use of the word 'guity' in the verdict was held sufficient. See also McGee v. State, 39 Texas Crim. Rep., 190, and Harwell v. State, 22 Texas Crim. App., 251. There could be no misunderstanding as to the verdict of the jury.

2. That the verdict of the jury is erroneous because it was arrived at by lot. The testimony adduced on the hearing of the motion does not support the contention of appellant in this regard. The court heard the testimony, and finds against the contention of appellant, and we think correctly so.''

The judgment is affirmed.

*Affirmed.*

[Rehearing denied February 19, 1913.—Reporter.]